ORDERED.

**Dated:  March 18, 2022**

Jerry A. Funk
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

In re:                                                    Case No.: 3:21-bk-1301-JAF

NOEL JEVON CHAMBERS,                        Chapter 7

      Debtor.

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

      This case came before the Court upon the United States Trustee's (the "U.S. Trustee") Motion to Dismiss Pursuant to 11 U.S.C. Section 707(b)(1) Based on Presumption of Abuse Arising Under 11 U.S.C. Section 707(b)(2) and for Totality of the Circumstances under 11 U.S. C. § 707(b)(3) (the "Motion to Dismiss") (Doc. 9). On December 9, 2021, the Court conducted a trial on the Motion to Dismiss.  The parties entered into a stipulation of facts, and the Court heard the testimony of the Debtor.  At the conclusion of the trial, the Court directed the parties to submit briefs in support of their respective positions.  Upon the evidence and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

The Debtor is a 44 year-old single, divorced man with no dependents. The Debtor is employed as a document control specialist for Collins Aerospace, where he has been employed for nine years.  The Debtor's sole source of income is wages from his job.

On May 25, 2021, the Debtor filed this Chapter 7 bankruptcy petition. The Debtor's average income from November 2020 to April 2021 ("CMI") was $5,269.67.  During that six-month period, the Debtor received gross overtime pay of $226.44 on April 16, 2021, and gross overtime pay of $860.48 on April 30, 2021. The overtime wages increased the Debtor's CMI by $181.15 per month. The Debtor claims monthly taxes of $1,024.84. Taking into account his remaining deductions as set forth in the Means Test, the Debtor's Means Test reflects monthly disposable income of $454.97.  The U.S. Trustee asserts that the Debtor's monthly tax liability is $840.18 resulting in monthly disposable income of $639.63.[1]

The Debtor lives in a one bedroom, one bathroom apartment totaling 527 square feet. The base rent for the apartment is $1,140.00 a month.[2] Additionally, the Debtor pays the following monthly expenses: 1) storage unit-$50.00; 2) Pet rent fee-$30.00; 3) Trash fee-$25.00; 4) Administrative fee-$4.00; and 5) water/sewage fees, which vary depending upon usage.  The Debtor's average rental expense from November 2020 to December 2021 was $1,252.96, but the Debtor claims a monthly rental expense of $1,233.34. The applicable IRS and local standard expense allowance for rent is $925.00. The Debtor testified that he conducted research and considered at least six other apartment complexes before deciding to move into his apartment complex. The Debtor considered the proximity to his work, the availability of on-site storage at the complex, and safety.  The Debtor testified that if he lived in an apartment complex without

---

[1] The difference between the $1,024.84, which the Debtor claims, and the $840.18, which the U.S. Trustee claims, is $184.66, one twelfth of the Debtor's 2020 federal income tax refund.

[2] The current base rent for the Debtor's apartment floorplan is $1,295.00.

on-site storage, he would spend $100.00-$125.00 on offsite storage. The Debtor also testified that if he could find a cheaper place to live, he could not afford the estimated $3,000.00 it would cost to move his belongings. Since March 2020, the cost of a one-bedroom apartment in Jacksonville, Florida has increased by at least 10.7%, and the average cost of an apartment in Jacksonville has increased by at least 18.5%.

The Debtor has two dogs, both of whom have medical conditions for which they take medication.  In addition to the $30.00 monthly pet rent fee charged by his apartment, the Debtor has monthly pet expenses of $100.00.  The Debtor, who has no children, testified that his pets are like his children.

On his Means Test, the Debtor claims special circumstances of $100.00 for his additional pet expenses, $308.00 for the rent which he pays in excess of the IRS standard, and $138.78, which is the monthly net overtime pay he received from November 2020 to April 2021.

From May 14, 2021, until November 26, 2021, the Debtor continued to receive overtime pay totaling $2,566.64.  The Debtor earned the overtime pay, which began in April, because he was working on a special project to merge the systems of his company and another company. The Debtor testified that the special project ended at the beginning of July and that any overtime pay since that time is the result of a company-wide payroll system error that incorrectly calculates the number of hours an employee works. The Debtor testified that he has not worked any overtime since the end of the special project and could be required to repay the improper overtime pay once the system error is corrected.

From 2018 to 2020, the Debtor received federal income tax refunds in the respective amounts of $1,511.00, $2,055.00, and $2,216.00.

3

Prior to filing his bankruptcy petition, the Debtor took out a loan from his retirement plan and used the proceeds to pay his bankruptcy attorney and sustain his normal living expenses, including pet expenses and vehicle maintenance. The Debtor's monthly payments on the loan are $154.64.

The Debtor's Schedule I claims: (i) his gross monthly income is $5,063.77; ii) his monthly tax liability is $980.66; and (iii) his monthly repayment of his 401k loan is $154.64. Taking those and other expenses into account results in a net monthly income of $3,397.37. The Debtor's Schedule J lists his average monthly expenses as $3,508.23. Based on the Debtor's calculations, his monthly expenses exceed his monthly net income by $110.86.

The U.S. Trustee claims the Debtor's gross monthly income is $5,591.21, and his monthly tax liability is $1,247.47. The U.S. Trustee claims the Debtor should not be able to deduct his monthly retirement fund loan of $154.64. Taking the tax liability and other expenses into account, the U.S. Trustee claims the Debtor's net monthly income is $3,790.68. Additionally, the U.S. Trustee claims the Debtor should be required to add in his monthly over-withholding of federal income tax in the amount of $184.66, resulting in total monthly income of $3,975.34. The U.S. Trustee does not take issue with the Debtor's claimed monthly expenses of $3,508.23. Based on the U.S. Trustee's calculations, the Debtor's monthly net income exceeds his monthly expenses by $467.11.

## Conclusions of Law

"The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367 (2007). "In enacting the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ('BAPCPA'), Congress made sweeping changes to the Bankruptcy Code to address perceived abuses of the

bankruptcy system and to ensure that debtors with the ability to repay their debts do so." In re Norwood-Hill, 403 B.R. 905-907-08 (Bankr. M.D. Fla. 2009). "In a Chapter 7 proceeding, an individual debtor receives an immediate unconditional discharge of personal liabilities for debts in exchange for the liquidation of all non-exempt assets." Schultz v. U.S., 529 F.3d 343, 346 (6th Cir. 2008). However, it is well-established that a debtor has no constitutionally protected right to receive a discharge in bankruptcy. In re Jacob, 447 B.R. 535, 538 (Bankr. N.D. Ohio 2010) (citing Grogan v. Garner, 498 U.S. 279, 286 (1991)); See also In re Egebjerg, 574 F.3d 1045, 1048 (9th Cir. 2009). ("There is now no presumption favoring Chapter 7 relief, but an emphasis on repaying creditors as much as possible."). Discharge "is, instead, a legislatively created benefit that Congress may withhold at its discretion." In re Jacob, 447 B.R. at 538.

"To that end, Congress has prescribed conditions under which a debtor's bankruptcy case must be dismissed." Id. When Chapter 7 relief is sought, the conditions mandating dismissal are set forth in § 707 of the Bankruptcy Code. Section 707(b)(1) provides that a court may dismiss a Chapter 7 case filed by an individual whose debts are primarily consumer debts if it finds that the granting of relief would be an abuse of the provisions of Chapter 7. The Trustee seeks to have the case dismissed pursuant to §§ 707(b)(2)(A) and (b)(3)(B).

### Dismissal Pursuant to 11 U.S.C. § 707(b)(2)(A)-the Presumption of Abuse

Section 707(b)(2)(A)(i) requires a court to presume that abuse exists if the debtor's current monthly income, reduced by allowed deductions and multiplied by 60, is greater than or equal to the greater of 25% of the debtor's nonpriority, unsecured claims or $8,175, whichever is greater, or $13,650. Stated differently, if after deducting all allowable expenses from a debtor's current monthly income, the debtor has less than $136.25 per month in net income (i.e., less than $8,175 to fund a 60–month plan), the filing is not presumed abusive. If the debtor has monthly

net income of $227.50 or more (i.e., at least $13,650 to fund a 60–month plan), the filing is presumed abusive. Finally, if the debtor's net monthly income is more than $136.25 but less than $227.50, the case will be presumed abusive if that sum, when multiplied by 60 months, will pay $25% or more of the debtor's non-priority, unsecured debts.

A debtor may only rebut the presumption of abuse by demonstrating special circumstances, such as a serious medical condition or order to active-duty service in the Armed Forces, to the extent such special circumstances justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative. 11 U.S.C. § 707(b)(2)(B)(i). A debtor claiming special circumstances must provide itemized documentation of his expenses and a detailed explanation of the special circumstances, which justify the expenses for which there is no reasonable alternative.

 "[T]he universe of special circumstances is not limited to serious medical conditions and active duty ..." In re Turner, 376 B.R. 370, 378 (Bankr. D.N.H. 2007). "However, only circumstances, which are similar in nature to the two enumerated examples are sufficient to rebut the presumption of abuse." In re Tauter, 402 B.R. 903, 906 (Bankr. M.D. Fla. 2009) (citing In re Smith, 388 B.R. 885, 888 (Bankr. C.D. Ill. 2008)). "The similarity in nature of the two examples is that they are life circumstances that directly and unavoidably affect one's earning capacity or give rise to necessary, additional expenses." Smith, 388 B.R. at 888.

As the Court noted, the Debtor's Means Test reflects monthly disposable income of $454.97 while the U.S. Trustee asserts the Debtor's monthly disposable income is $639.63.  The U.S. Trustee asserts that the Debtor's proposed monthly income should be increased by $184.66, which is one twelfth of the Debtor's $2,216.00 overpayment on his 2020 federal income taxes. The U.S. Trustee points to the Debtor's testimony that nothing had changed concerning his tax

situation and contends that the over-withholding should therefore be included in the Debtor's income. The Debtor asserts that tax refunds are not necessarily guaranteed and should not be imputed to reduce his tax deductions on the Means Test. He also points out that in previous years he has used his tax refund on necessary living expenses.  The Court agrees with the U.S. Trustee. The Debtor's 2018-2020 tax returns reflect monthly over-withholding in the respective approximate amounts of $126.00, $171.00, and $185.00. Because the Debtor's pay statements which were admitted into evidence only reflect the Debtor's earnings and deductions through November 2021, it is impossible to determine the exact amount of the Debtor's 2021 refund. However, based upon the statements and the Debtor's testimony that his tax situation has remained the same, the Court finds that the Debtor's monthly over-withholding will be at least $126.00 per month.  Additionally, the fact that the Debtor has previously used his tax refunds on necessary living expenses does not persuade the Court that the refunds should not be included in his income.  The Court finds that the Debtor's monthly disposable income on the Means Test is $580.97.

The Debtor also claims the following three special circumstances. The Debtor claims a special circumstance of $308.00 for the rent which he pays which exceeds the IRS standard. The Court finds that the rent which the Debtor pays in excess of the IRS standard is a special circumstance for the following reasons.  The Debtor's apartment is close to his work, has on-site storage, which would otherwise cost the Debtor an extra $75.00-$100.00 per month, and is located in an area where the Debtor feels safe. Second, in today's surging rental market, the Court finds it highly unlikely that the Debtor could find a one-bedroom apartment in Jacksonville for less than what he currently pays and certainly could not find one for $925.00 per month.

Finally, even if the Debtor could find a nominally cheaper apartment, he could not come up with the approximate $3,000.00 it would cost him to move.

The Debtor also claims a special circumstance in the amount of $138.78, the monthly net overtime pay he received from November 2020 to April 2021. The Debtor argues that the overtime pay is a special circumstance based upon his subsequent pay history and that the overtime pay artificially inflated his CMI. The U.S. Trustee argues that the overtime pay is not a special circumstance because the Debtor continued to receive regular overtime from May 2021 until at least November 2021.

The Debtor testified that the special project he worked on to earn overtime pay ended at the beginning of July and that any overtime pay since that time is the result of a company-wide payroll system error that incorrectly calculates the number of hours an employee actually worked. The Debtor testified that he has not worked any overtime hours since the end of the special project and could be required to repay the improper overtime pay once the system error is corrected. However, as the U.S. Trustee points out, despite the fact that the Debtor continued to receive erroneous overtime pay for over four months after the special project ended, he did not offer any documentary evidence, as required by the statute, to support his explanation. In the absence of documentary evidence stating that the overtime pay was erroneous and would conclude on a date certain in the near future, the Court does not find the $138.78 monthly net overtime pay the Debtor received from November 2020 to April 2021 to be a special circumstance, such that his income should be reduced by that amount.

Finally, the Debtor claims a special circumstance of $100.00 monthly for his pet expenses. The U.S. Trustee argues that pet expenses do not meet the special circumstance standard because owning a pet is optional and debtors have a "reasonable alternative" of not

owning a pet.  The Debtor, who is single and has no children, testified that his dogs, both of whom have medical conditions which require medication, are like children to him. While not owning a pet is indeed a reasonable alternative, the Debtor already owns his dogs. His only options at this point are to find another home for the dogs or to euthanize them, neither of which is a satisfactory option.  In this particular situation, the Court finds that the Debtor's additionally monthly pet expense of $100.00 is a special circumstance.

Reducing the Debtor's monthly disposable income of $580.97 by $308.00 for the rent in excess of the IRS standard and $100.00 for the additional pet expenses, results in adjusted monthly disposable income of $172.97.  That amount multiplied by 60 equals $10,378.20, which will not pay at least 25% of the Debtor's non-priority unsecured debts, which is $12,382.70. Accordingly, granting relief would not be an abuse pursuant to § 707(b)(2)(A).

**Dismissal Pursuant to § 707(b)(3)-Totality of the Circumstances**

The Trustee also seeks to have the case dismissed pursuant to § 707(b)(3)(B), which provides: "In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(i) does not arise or is rebutted, the court shall consider [whether] (B) the totality of the circumstances … of the debtor's financial situation demonstrates abuse.  11 U.S.C. § 707.

A debtor's ability to pay, as measured by what he could pay in a hypothetical 13 case, is the primary but not conclusive factor a court must consider in a § 707(b)(3)(B) analysis. In re Norwood-Hill, 403 B.R. 905, 912 (Bankr. M.D. Fla. 2009).  That is, the ability to pay something, standing alone, is insufficient to warrant dismissal.  Id. (citing In re Degross, 272 B.R. 309, 313 (Bankr. M.D. Fla. 2001)).  The better reasoned analysis is one which considers a debtor's ability to pay along with other circumstances. In re Degross, 272 B.R. at 313.  If a debtor has the ability

to pay something, the Court looks to the following factors, to the extent they are helpful, to determine whether they militate against or in favor of dismissal: 1) whether unforeseen or catastrophic events such as sudden illness, disability, or unemployment propelled the debtor into bankruptcy; 2) whether the debtor's standard of living has substantially improved as a result of the bankruptcy filing or essentially remained the same; 3) the debtor's age, health, dependents, and other family responsibilities; 4) the debtor's eligibility for Chapter 13 relief and whether creditors would receive a meaningful distribution in a Chapter 13 case; 5) the age of the debts for which the debtor seeks a discharge and the period over which they were incurred; 6) whether the debtor incurred cash advances and made consumer purchases far in excess of the ability to repay; 7) whether the debtor made any payments toward the debts or attempted to negotiate with creditors; and 8) the accuracy of the debtor's schedules and statement of current income and expenses. In re Norwood-Hill, 403 B.R. at 912.

The U.S. Trustee claims the Debtor's gross monthly income is $5,591.21, and his monthly tax liability is $1,247.47. The U.S. Trustee claims the Debtor should not be able to deduct his monthly retirement fund loan of $154.64. Taking the tax liability and other expenses into account, the U.S. Trustee claims the Debtor's net monthly income is $3,790.68. Additionally, the U.S. Trustee claims the Debtor should be required to add in his monthly over-withholding of federal income tax in the amount of $184.66, resulting in total monthly income of $3,975.34. The U.S. Trustee does not take issue with the Debtor's claimed monthly expenses of $3,508.23. Based on the U.S. Trustee's calculations, the Debtor's monthly net income exceeds his monthly expenses by $467.11.

The first issue is whether the Debtor's post-petition overtime pay should be used to calculate his income for purposes of § 707(b)(3). For the reasons previously set forth regarding

the Debtor's claim of a special circumstance as to the overtime income he earned from November 2020 until April 2021, the Court agrees with the U.S. Trustee that the Debtor's post-petition overtime pay should be used to calculate his income for purposes of § 707(b)(3). Accordingly, the Court finds that the Debtor's gross monthly income is $5,591.21.

The second point of contention is whether the Debtor's income should include the pro-rated refunds.  For the reasons previously set forth, the Court find that the Debtor's monthly income should include the pro-rated refunds in an amount of at least $126.00.  The final issue is whether the Debtor should be permitted to deduct his $154.60 monthly 401k loan repayment from his income. Courts have decided this issue both ways, but the Court finds that in this particular circumstance the Debtor should be permitted to deduct his 401k loan repayment. Taking the foregoing calculations into account, the Court finds that the Debtor has monthly net income of approximately $229.47 and would be able to pay an approximate 28% dividend to his unsecured creditors in a Chapter 13 case.

Having found that the Debtor can pay a dividend to his unsecured creditors in a Chapter 13 case, the Court turns to whether there are any factors which weigh against dismissal. Although the Court finds the Debtor to be candid, credible, and sincere, there are not any factors which weigh against dismissal in this case. There were no unforeseen or catastrophic events which propelled the Debtor into bankruptcy. The Debtor has a stable job with no periods of unemployment and does not suffer from illness or disability. The Debtor is eligible for Chapter 13 relief and can pay an approximate twenty-eight percent dividend to his unsecured creditors in a 60-month hypothetical Chapter 13 plan, a dividend the Court finds to be meaningful.  The Court finds that granting the Debtor a Chapter 7 discharge would constitute an abuse under §

707(b)(3) of the Bankruptcy Code.  Accordingly, the Court finds it appropriate to dismiss the case.

**<u>Conclusion</u>**

The Debtor is eligible for Chapter 13 relief and can pay an approximate twenty-eight percent dividend to his unsecured creditors in a 60-month hypothetical Chapter 13 plan, a dividend the Court finds to be meaningful.  The Court finds that granting the Debtor a Chapter 7 discharge would constitute an abuse under § 707(b)(3) of the Bankruptcy Code.  Accordingly, the Court finds it appropriate to dismiss the case.  The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

Attorney Kevin Paysinger is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order.